J-S81029-16

2017 PA Super 403

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| STEPHEN MACKEY | | |
| Appellant | : | No. 1460 EDA 2015 |

Appeal from the Judgment of Sentence April 13, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010023-2014

BEFORE: BOWES, J., MOULTON, J., and STEVENS*, P.J.E.

DISSENTING OPINION BY STEVENS, P.J.E.: **FILED DECEMBER 20, 2017**

In a 1999 Pennsylvania Supreme Court case, ***Commonwealth v. Hawkins***, 692 A.2d 1068 (Pa. 1997), the Opinion Announcing the Judgment of the Court dismissed as "fanciful and histrionic" the Commonwealth's references to schoolyard shootings and assassination of public figures as possible consequences if ***Terry***[1] jurisprudence always required independent corroboration of "man with gun" anonymous tips.

---

[1] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct 1868, 20 L.Ed 2d. 889 (1968) (holding an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has reasonable, articulable suspicion that criminal activity is afoot).

---

* Former Justice specially assigned to the Superior Court.

Sadly, the Commonwealth's references in 1997 were neither fanciful nor histrionic; they were, instead, prescient.[2]  If anything, our law enforcement officers, our children, and our law-abiding citizens are at risk of serious danger more than ever before from indiscriminate gun use by violent criminals.  Such violence, especially the vicious targeting of our law enforcement officers, cannot be tolerated.

The touchstone of **Terry** is reasonableness, a standard derived from balancing the government's interest in intruding, the degree of the intrusion, and the citizen's counterveiling privacy interest.  On balance, the totality of circumstances pertinent to the reasonableness inquiry in the instant case weighed in favor of the government's interest in promoting public safety by securing Appellant for a **Terry** frisk.  The "man with gun" tip not only described the suspect's appearance and location specifically, it also placed him on a crowded bus in a high crime neighborhood.

To invalidate a weapons pat-down under these facts, occurring as they did against a backdrop of escalating acts of random gun violence in our society, would place an undue restraint on law enforcement's ability to

---

[2] Columbine High School, Colorado, April 1999: 15 fatally shot victims; Tucson, Arizona, January 2011: assassination attempt of U.S. Representative Gabby Giffords leaves six dead and 13 wounded;  Sandy Hook Elementary School, Connecticut, December 2012: 28 fatally shot victims;  Blooming Grove, Pennsylvania, September 2014: State Trooper Bryon Dickson II fatally shot, State Trooper Alex Douglass critically injured;  Washington, D.C., June 2017: armed attack of congressional staff baseball team and capitol police; October 2017, Las Vegas, Nevada: 58 people fatally shot, 546 injured.

respond effectively to a report of imminent danger and, consequently, would jeopardize both the public's and police safety.

As former Justices Sandra Newman and Ron Castille so cogently noted:

I can think of no more compelling reason for the police to conduct a *Terry* stop and frisk than in a situation where they receive a tip that a man with a gun is lingering around a schoolyard. I shudder to think what might happen if the police were forced, as the Majority suggests, to wait for the man to use the gun before they could act.

Accordingly, I would hold that under the totality of the circumstances here, where police immediately found Hawkins, who matched the informant's description of a "man with a gun" at an exact location in the middle of the night and, given the likelihood that the gun was illegal, police had sufficient reasonable suspicion that there was a reasonable suspicion of criminal activity to stop Hawkins and conduct a protective frisk.

….

…[W]e must consider the nominal intrusion that occurs when police conduct a protective frisk. During a pat-down, police simply feel the outer surface of a suspect's garments. They do not enter pockets of interior clothing unless they feel an object that could be a concealed weapon. Further, as noted [in ***United States v. Clipper***, 973 F.2d 944 (D.C.Cir. 1992)], mere surveillance or attempts to approach and question "man with gun" suspects could have grave consequences. Clearly the safety interests of the police in a "man with gun" case outweigh the limited invasion of privacy that occurs during a patdown search.

…[T]he balancing test in *Terry* should be resolved in favor of the police in "man with gun" cases. The Majority's interpretation of *Terry* in "man with gun" cases ties the hand of the police and leaves them susceptible to ambush and assault.

….

I agree with the Majority that Article I, Section 8 of the Pennsylvania Constitution vigorously protects each citizen's

personal privacy, but I believe the Majority has failed to properly weigh the countervailing safety interests of the public and the police when responding to a "man with a gun" tip in its analysis pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reality of law enforcement in today's society is that bank robbers, fanatics and other gunmen are fully armed and ready to indiscriminately kill citizens and police.[] The Majority loses sight of the fact that *Terry* was written to help protect police from the dangers of armed suspects. Therefore, I respectfully dissent and call out for the protection of people in law enforcement and in our entire society through a proper evaluation of their safety interests pursuant to the Fourth Amendment to the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution.[]

*Hawkins*, 692 A.2d at 1071-76 (Newman, J., dissenting) (citations and footnotes omitted).

Twenty years after *Hawkins*, society's interest in protecting its law enforcement officers and citizens from arbitrary acts of gun violence has clearly become more compelling, more urgent, and more serious than ever before. Waiting for the man to use the gun would only lead to another tragic loss of innocent lives.

Accordingly, because I find the totality of circumstances made the "man with gun" tip sufficiently reliable to justify the police response in the present case, I would affirm judgment of sentence.